# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANN M. DECORREVONT,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:19-cv-137
Dlott, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

This matter is before the Court on defendant's motion for voluntary remand (Doc. 6),
plaintiff's response in opposition (Doc. 7), and defendant's reply in support of the motion (Doc.
10). The matter is also before the Court on the Commissioner's motion to strike plaintiff's
statement of specific errors and, in the alternative, response to plaintiff's statement of errors
(Doc. 11), and plaintiff's reply in support of her statement of errors (Doc. 12).

## I. Procedural history

Plaintiff protectively filed an application for disability insurance benefits (DIB) in
September 2013 and an application for supplemental security income in February 2014, alleging
disability beginning on January 18, 2013. The claims were denied initially and upon
reconsideration. Administrative Law Judge (ALJ) Kevin J. Detherage held a hearing on
plaintiff's claim on April 27, 2016. (Tr. 40-92). Plaintiff, who was represented by counsel,
and a vocational expert (VE) appeared and testified at the hearing. The ALJ issued a decision
denying plaintiff's claim for benefits on August 18, 2016. (Tr. 21-34). The Appeals Council
upheld the ALJ's decision on August 25, 2017. (Tr. 1-8). Plaintiff appealed the decision to
this Court on October 11, 2017. *See* Case No. 1:17-cv-00683. On March 28, 2018, this Court
granted the parties' joint motion for remand of the case for further administrative proceedings
pursuant to Sentence Four of 42 U.S.C. § 405(g). (Tr. 1316-22). The matter was remanded to

an ALJ for further proceedings, including the taking of additional evidence, a *de novo* hearing, and complete reevaluation of plaintiff's claim from the beginning of the sequential evaluation, including reevaluation of the weight given to the treating source opinion and plaintiff's subjective complaints. (Tr. 1316).

A second ALJ hearing was held on remand before ALJ William Diggs on November 28, 2018. (Tr. 1247-77). ALJ Diggs issued a decision denying plaintiff's claim for benefits on December 17, 2018. (Tr. 1220-39). According to the Commissioner, the Appeals Council denied review. (Doc. 6 at 1). Plaintiff appealed the decision to this Court on February 22, 2019. On May 14, 2019, the Commissioner filed the unilateral motion for voluntary remand under sentence four of 42 U.S.C. § 405(g). (Doc. 6).

## II. The Commissioner's motion for voluntary remand (Doc. 6)

The Commissioner requests that the Court enter an order and judgment reversing the final decision of the Commissioner of Social Security pursuant to Sentence Four of 42 U.S.C. § 405(g) and remanding this matter to the Commissioner for further administrative proceedings and a new decision. The Commissioner claims that after he reviewed the evidence of record, he determined that the final decision contains an error. Specifically, the ALJ did not include in the hypothetical to the VE a limitation that the ALJ found was supported and which was included in the RFC: i.e., "occasional contact with supervisors, coworkers and the public." (Doc. 6 at 1, citing Tr. 1228, 1270-75). The Commissioner concedes that due to the error, the ALJ's step five finding that plaintiff could perform a significant number of jobs is not supported by substantial evidence. The Commissioner contends that on remand, the ALJ must obtain testimony from a VE to resolve whether an individual with plaintiff's job limitations could perform a significant number of jobs in the national economy, which is a factual issue. The

2

Commissioner argues that remand is the appropriate remedy because proof of disability is not overwhelming, and neither is this a case where proof of disability is strong and contrary evidence is lacking. The Commissioner has not cited any evidence from the record in support of the motion to remand.

Plaintiff opposes the motion for voluntary remand and seeks a determination on the merits of her appeal. (Doc. 7). Plaintiff argues that the ALJ committed several errors which warrant reversal of the Commissioner's decision. First, plaintiff agrees with the Commissioner that the ALJ erred by omitting "occasional" contact with supervisors, co-workers, and the public from the hypothetical to the VE. In addition, plaintiff argues that the ALJ erred by finding that she is not disabled by "significant" rheumatoid arthritis and symptoms of "significant" fatigue, which preclude her from performing sustained work for 40 hours per week in accordance with Social Security Ruling 96-8p. Further, plaintiff contends that the ALJ erred at step five of the sequential evaluation by relying on VE testimony about job data that is outdated or jobs that include frequent hand use for manipulation, which she is unable to perform. Plaintiff argues that remand and reversal for an immediate award of benefits is the appropriate remedy because the Commissioner has unnecessarily prolonged the resolution of her claim for benefits. Plaintiff notes that she filed her DIB and SSI applications over five years ago; the first ALJ hearing was held in April 2016; the Commissioner did not defend the first administrative decision on the merits but sought a voluntarily remand, which plaintiff agreed to; and the Commissioner seeks yet another remand without a decision on the merits of plaintiff's claim. Plaintiff contends there is no dispute that she suffers from severe fibromyalgia, and her treating physician has repeatedly opined that she suffers from disabling rheumatological conditions. Plaintiff alleges the treating physician's medical opinion is well-supported by the treatment

records, and the ALJ has not identified any credible, contradictory medical evidence.

Shortly after plaintiff filed her response to the motion for remand, she filed her statement of specific errors. (Doc. 8). Defendant filed a reply in support of the unilateral motion to remand (Doc. 10) and a motion to strike plaintiff's statement of errors and, in the alternative, a response to plaintiff's statement of specific errors (Doc. 11). The Commissioner acknowledges the case has been pending since 2013, but the Commissioner contends this is not a sufficient reason in and of itself to justify a remand for an immediate award of benefits absent strong proof of disability. (Doc. 10 at 3). The Commissioner relies on two decisions from this Court to support his position: *Scott v. Comm'r of Soc. Sec.*, No. 1:16-cv-697, 2017 WL 1052595, at *2 (S.D. Ohio Mar. 20, 2017) (Report and Recommendation) (Litkovitz, M.J.), *adopted,* 2017 WL 1410817 (S.D. Ohio Apr. 19, 2017) (Dlott, J.), and *Parr v. Comm'r*, No. 1:15-cv-314, 2016 WL 4064044, at *6 (S.D. Ohio July 29, 2016) (Report and Recommendation) (Litkovitz, M.J.), *adopted,* 2017 WL 1055151 (S.D. Ohio Mar. 21, 2017) (Barrett, J.). In both cases, the Court found that the length of time a case has been pending does not, standing alone, warrant an immediate award of benefits. However, the cited cases do not otherwise support the Commissioner's position here.

First, the Court in *Parr* denied the Commissioner's motion for voluntary remand pending briefing on the merits of the plaintiff's claim for benefits because resolution of the claim had already been delayed. *Parr* 2016 WL 4064044, at *6. The undersigned recommended to the district judge that the Commissioner's motion be denied for the following reasons:

> Given the length of time that plaintiff's disability applications have been pending and the fact that this Court previously remanded this case once before, it is appropriate to consider the merits of plaintiff's appeal of the Commissioner's decision denying her applications for DIB and SSI. Nearly seven years have elapsed since the filing of plaintiff's disability applications. Further delay in the

resolution of plaintiff's claim for benefits would be unjust. The proper and just course is for the Court to consider the merits of plaintiff's appeal pursuant to Sentence Four of § 405(g) and deny the Commissioner's motion for voluntary remand.

*Id.*[1]

Second, the Court in *Scott* initially denied the Commissioner's motion for voluntary remand and ordered briefing on the merits of the plaintiff's appeal. *Scott v. Comm'r of Soc. Sec.*, No. 1:16-cv-697, 2017 WL 89026, at *2-3 (S.D. Ohio Jan. 10, 2017) (Litkovitz, M.J.). In *Scott*, as in this case, the Commissioner conceded that the ALJ's decision was "flawed" and could not be defended; however, the Commissioner alleged that it was "not appropriate for th[e] Court to reverse the administrative decision and award benefits because 'not all essential factual issues ha[d] been resolved.'" *Id.* at *2. The Commissioner had addressed only one of the plaintiff's several physical impairments and had not discussed the plaintiff's severe mental impairments. *Id.* The Court found that the Commissioner's "truncated argument for remand, supported by sparse references to medical exhibits from a record that covers over five years, does not establish that a remand for further administrative proceedings, as opposed to a remand and reversal for an outright award of benefits, is the appropriate outcome here." The Court therefore denied the Commissioner's motion for a voluntarily remand. *Id.* The Court ordered the parties to brief the only issue before the Court: "whether th[e] matter should be reversed and remanded for rehearing or reversed for an immediate award of benefits [under] 42 U.S.C. § 405(g)," which is generally appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* at *3 (quoting *Faucher v. Sec. of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994)).

---

[1] The district judge adopted the Report and Recommendation in its entirety. *Parr*, 2017 WL 1055151.

The Court found after considering the briefs on the merits that the nearly six years that the plaintiff's application for benefits had been pending did not suffice to justify a remand for an immediate award of benefits "absent strong proof that plaintiff was limited to sedentary work" as of the alleged disability onset date. *Scott*, 2017 WL 1052595, at *7. The Court concluded that such proof was lacking and factual questions remained that the Commissioner had to determine "in the first instance." *Id*. Only after considering the record evidence did the Court decide that the proper remedy was to remand the claim for further administrative proceedings.

Here, the Commissioner asks the Court to remand this matter based only on his representation that the ALJ committed a single error at step five of the sequential evaluation, thereby leaving factual issues to be resolved. (Docs. 5, 10). The Commissioner asks the Court to remand the case to the agency so that the ALJ can correct the error by eliciting additional VE testimony and determining whether there are a significant number of jobs in the national economy that an individual with plaintiff's limitations can perform. (Doc. 10 at 5). Plaintiff counters that the ALJ committed additional errors related to (1) the functional limitations imposed by her severe impairments, (2) the evaluation of the treating physician's opinion, (3) the evaluation of her subjective complaints, and (4) the reliability of the VE's testimony. (Docs. 7, 8). The Court must review the record to consider these alleged errors and determine whether proof of disability is overwhelming, or otherwise strong and opposing evidence is lacking in substance. *Faucher v. Sec'y of HHS*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). Accordingly, the Commissioner's motion for voluntary remand (Doc. 6) should be denied.

### III. The Commissioner's motion to strike (Doc. 11)

If his motion for voluntary remand is denied, then the Commissioner asks the Court to

strike the statement of errors as "premature" because plaintiff filed it before the Court ruled on the motion to remand. Plaintiff's claim for disability benefits has been pending for over five years. Before she filed her statement of errors, the Commissioner had not yet addressed the merits of plaintiff's claim on appeal and instead had twice moved that her claim be remanded for further administrative proceedings. Plaintiff's claim is now ripe for review on the merits. The Court has before it plaintiff's statement of errors (Doc. 8), the Commissioner's response to the statement of errors (Doc. 11), and plaintiff's reply in support of her statement of errors (Doc. 12). Striking the statement of errors at this point would prejudice plaintiff by further delaying resolution of her claim for disability benefits. On the other hand, the Commissioner does not allege that he has suffered any prejudice as a result of plaintiff's filing. The Court therefore declines to strike plaintiff's statement of errors.

## IV. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B.    The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2019.

2. The [plaintiff] has not engaged in substantial gainful activity since January 18, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: inflammatory arthritis, fibromyalgia, obesity, and an affective disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she must change positions periodically to relieve pain and discomfort. Gross and fine manipulation is limited to frequently bilaterally. She can never climb ladders, ropes, or scaffolds, but can climb ramps and stairs occasionally. She can balance frequently. She can stoop, kneel, and crouch occasionally, but can never crawl. She must avoid all exposure to work hazards, such as dangerous machinery and unprotected heights. She is limited to simple, routine tasks in an environment with no fast-paced, strict production demands. She is limited to occasional contact with supervisors, coworkers, and the public. She is limited to work settings with occasional changes explained in advance.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1975 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404 Subpart P. Appendix 2).

---

[2] Plaintiff had past relevant work as a flower deliverer, a medium, unskilled position; a food server and restaurant manager, both light, semi-skilled positions which plaintiff performed at the medium exertion level; and a retail store manager, a skilled, light position which plaintiff performed at the medium exertion level. (Tr. 1237).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 18, 2013, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 1226-39).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[3] The ALJ relied on the VE's testimony to find that plaintiff could perform the requirements of representative sedentary, unskilled occupations such as printed circuit board assembly screener, DOT (Dictionary of Occupational Titles) 726.684-110 (approximately 10,000 jobs in the national economy); addresser, DOT 209.587-010 (6,100 jobs in the national economy); and document preparer, DOT 249.587-018 (21,000 jobs in the national economy). (Tr. 1238).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific errors

Plaintiff alleges that ALJ Diggs' December 2018 written decision is not supported by substantial evidence. (Doc. 8). Plaintiff contends that the ALJ committed the following errors: (1) the ALJ did not take into account plaintiff's fatigue, which would prevent her from sustaining work for 40 hours per week, and her inability to perform unskilled work requiring the frequent use of her hands; (2) the ALJ did not properly weigh the medical source opinions; (3) the ALJ failed to consider in the alternative whether plaintiff was entitled to a closed period of disability from her alleged onset date until December 3, 2015; (4) the ALJ failed to properly evaluate plaintiff's subjective complaints; and (5) the ALJ committed additional errors at step five of the sequential evaluation process by first, omitting mental and physical limitations from the hypothetical posed to the VE, and second, by relying on outdated and unsupported job data to find that plaintiff can perform a significant number of jobs in the national economy.[4]

---

[4] The Court has considered these assignments of error in a different order than plaintiff presents them in her statement of errors.

### 1. Weight to the medical sources' opinions

Plaintiff contends that the ALJ erred in weighing the opinions of plaintiff's treating physician, Dr. Matthew Burton, M.D., and the other medical sources of record. (Doc. 8 at 6-8). It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544.

The Commissioner is "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability." 20 C.F.R. § 404.1527(d)(1). The Commissioner relies on treating sources and other medical sources "to provide evidence, including opinions, on the nature and severity of [the claimant's] impairment(s)." 20 C.F.R. §§

404.1527(d)(1), 416.927(d)(1). Opinions on issues reserved to the Commissioner, including opinions that a claimant is "disabled" or "unable to work," are not medical opinions as described under 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). They are "administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." *Id.* The Commissioner does "not give any special significance to the source of an opinion" on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see also Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (citing Social Security Ruling (SSR) 96-5p, 1996 WL 362206 (July 2, 1996) ("even when offered by a treating source," an opinion that a claimant is "disabled" or "unable to work" is "never [] entitled to controlling weight or given special significance.")).[5] However, the ALJ must still "explain the consideration given to the treating source's opinion(s)." *Bass*, 499 F.3d at 511 (quoting SSR 96-5p).

Plaintiff alleges the ALJ committed several errors when evaluating her treating physician's opinion. Plaintiff alleges that the ALJ erred in characterizing Dr. Burton's March 2016 letter opinion as "conclusory." (Doc. 8 at 8, citing Tr. 1236). Plaintiff asserts that Dr. Burton specifically noted that her rheumatoid arthritis causes significant fatigue, which prevents her from sustaining work for 40 hours per week. (*Id.* at 8). Plaintiff argues that Dr. Burton is entitled to the most weight or "controlling" weight based on the treatment relationship with plaintiff, length of treatment, specialization, supportability, and consistency. (*Id.*). Plaintiff argues that the ALJ erred by instead giving "little weight" to Dr. Burton's opinion and by failing

---

[5] SSR 96-5p has been rescinded effective for claims filed on or after March 27, 2017. *See* SSR 96-2p, 2017 WL 3928298 (March 27, 2017). Because plaintiff filed her claims in 2013 and 2014, SSR 96-5p applies here.

to provide "good reasons" for "rejecting the disabling limitations" Dr. Burton assessed. (Doc. 8 at 7-8, citing Tr. 1218). Plaintiff contends the ALJ erred by not discussing "the significant fatigue from the [rheumatoid arthritis] and the fibromyalgia" and by "discussing objective findings with the fibromyalgia, as fibromyalgia does <u>not</u> produce objective findings on exams and tests."[6] (*Id.* at 7, citing cases). Plaintiff contends that the ALJ erred by assigning Dr. Burton's opinion "little weight" because the term is ambiguous. (*Id.* at 7). Plaintiff alleges it is unclear whether this is more than "some weight," which the ALJ gave the assessment of consultative examining physician Dr. Martin Fritzhand, M.D. (*Id.*). Plaintiff further contends that it is not clear from the ALJ's decision if he considered the medical records submitted after the nonexamining physicians completed their review of the medical evidence. (*Id.* at 6, citing Tr. 1234-36).

Initially, the Court finds that the ALJ did not err by using terms such as "some weight" and "little weight." This Court has previously rejected this argument:

> To the extent that plaintiff makes a semantic argument regarding the ALJ's use of the terms "some weight" and "little weight," this argument is not well-taken. The terms "significant weight," "some weight," and "little weight" are commonly used by ALJs in disability decisions when weighing medical opinions. This District has previously recognized that when an ALJ gives "significant weight" to a medical opinion, that means it is given more than "some weight" or "little weight." Likewise, assigning "some weight" to a medical opinion indicates that the ALJ is giving it more than a "little weight." *See, e.g., Moore v. Comm'r of*

---

[6] Plaintiff has not developed this argument factually in the context of this case, which revolves primarily around plaintiff's rheumatoid arthritis and, only peripherally, a possible fibromyalgia diagnosis. The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived." *Kuhn v. Washtenaw County,* 709 F.3d 612, 624 (6th Cir. 2013) (citing *Caudill v. Hollan,* 431 F.3d 900, 915 n. 13 (6th Cir. 2005) (citing recent decisions that stand for these two related propositions)). *See also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Plaintiff has therefore waived any claim of error related to the ALJ's failure to properly evaluate medical opinions related to fibromyalgia.

*Soc. Sec.*, No. 10-cv-916, 2012 WL 254139, at *12 (S.D. Ohio Jan.27, 2012)
(Report and Recommendation), *adopted,* 2012 WL 529778 (S.D. Ohio Feb. 17,
2012); *Lambert ex. rel. Lambert v. Astrue,* No. 3:10-cv-435, 2012 WL 37389, at
*8 (S.D. Ohio Jan. 9, 2012) (Report and Recommendation), *adopted,* 2012 WL
966060 (S.D. Ohio March 21, 2012). Thus, the ALJ's opinion sufficiently
details that he has given more weight to the opinions of the state agency
reviewing physicians by giving them "some weight," than to the opinions of
plaintiff's treating and examining physicians, on which he placed "little weight"
or "no weight."

*Farris v. Commr. of Soc. Sec.*, No. 1:11-cv-258, 2012 WL 1552634, at *8 (S.D. Ohio Apr. 30,

2012) (Report and Recommendation) (Litkovitz, M.J.), *adopted,* 2012 WL 1884232 (S.D. Ohio

May 22, 2012) (Beckwith, J.). The same reasoning applies to the ALJ's decision in this case.

Further, plaintiff has not shown that the ALJ erred in evaluating the non-examining state

agency physicians' opinions. Plaintiff suggests that the ALJ did not consider that they had no

opportunity to review medical evidence generated after their 2014 opinions. In a situation

where the reviewing physicians have not had an opportunity to consider relevant medical

information, "the ALJ must at least indicate that he considered these facts before giving greater

weight to an opinion that is not 'based on a review of a complete case record.'" *Blakley v.*

*Comm'r of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir. 2009) (citing *Fisk v. Astrue,* 253 F. App'x 580,

585 (6th Cir. 2007) (quoting SSR 96-6p, 1996 WL 374180, at *3)). The ALJ did so in this

case. The ALJ gave only "some" weight to the opinions of the nonexamining physicians that

plaintiff could perform "light" work because he explicitly found that later submitted evidence

supported a finding she could perform only "sedentary" work with a sit/stand option and no

crawling, in addition to other limitations. (Tr. 1234, citing Tr. 93-105, 106-118, 121-134, 135-

148). Plaintiff has not shown that the ALJ committed any error in this regard.

Moreover, the ALJ was not bound to give Dr. Burton's opinion any special significance

insofar as Dr. Burton opined that plaintiff had "been unable to work for the past three years" and

"disability" was "justifiable" in her case. (Tr. 1218). The ALJ reasonably found that Dr. Burton's opinion was on the ultimate issue of disability, which is reserved to the Commissioner under §§ 404.1527(d)(1) and 416.927(d)(1). (*See* Tr. 1235). The ALJ reasonably declined to give Dr. Burton's assessment "controlling" weight on the ground it was a conclusory statement with no function-by-function limitations. (*Id.*). *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ nonetheless erred in finding that Dr. Burton's opinion was entitled to only "little" weight. (Tr. 1235). The ALJ considered the nature and length of the treatment relationship and Dr. Burton's specialization, noting that Dr. Burton had been plaintiff's treating rheumatologist for six years as of the date he gave his assessment and the assessment related to his area of specialization. The ALJ discounted the opinion because it was inconsistent with Dr. Burton's own treatment notes. (Tr. 1235-1236). For the reasons discussed *infra*, the ALJ's decision to discount Dr. Burton's opinion is not substantially supported by the record.

In his letter opinion, Dr. Burton attributed plaintiff's inability to work, in part, to severe active rheumatoid arthritis which caused joint pain, swelling, and severe fatigue; a lack of long-term success with plaintiff's treatment options, which included seven Methotrexate tablets per week and biologic treatments such as Humira, Actemra, Remicade, and Orencia, and most recently Rituxan; and "continue[d] . . . significant fatigue and joint pain from this rheumatoid disease." (Tr. 1218). The ALJ found based on the records that plaintiff's "rheumatological examinations repeatedly show that her symptoms are controlled with medication" and that Dr. Burton "has repeatedly noted that she could participate in all or most activities of daily living." (Tr. 1227). The ALJ specifically found that plaintiff was diagnosed with rheumatoid arthritis as early as April 2010, but she was showing improvement at that time since starting infusion therapy with intravenous (IV) Remicade. (Tr. 1229, citing Tr. 957). Plaintiff had no swelling

16

or active synovitis, and her energy level had been good.  (*Id.*).  The ALJ found that by January 2013, the Remicade was no longer effective and plaintiff had active synovitis[7], especially in the hands, wrists, elbows, shoulders, hips, knees and ankles, and fatigue.  (Tr. 1230, citing Tr. 629-31).  The ALJ stated that plaintiff's medications were changed and as of March 2013, she had no active synovitis in these areas and "Dr. Burton was pleased with how her medications were working."  (Tr. 1235, citing Tr. 582-83).  The ALJ found that while subsequent treatment notes documented some symptoms, the exam findings were generally normal and disclosed only mild swelling or no swelling.[8]  (Tr. 1230-31, 1235-37).  The ALJ found that plaintiff's rheumatoid arthritis was reported at various points to be improved on certain medications or generally controlled with medication.

The ALJ's depiction of the evidence as showing plaintiff's condition had "improved" or was "controlled with medication" is not substantially supported by the record.  Comments in the record that plaintiff had improved or that a medication was working "are relative rather than absolute" and reflect the fact that treatment helped at times; however, the comments are not indicative of overall improvement in plaintiff's rheumatoid arthritis and symptomatology when read in context.  *Winn v. Commr. of Soc. Sec.*, 615 F. App'x 315, 322 (6th Cir. 2015); *see also Boulis-Gasche*, 451 F. App'x 488, 494 (6th Cir. 2011).  Though plaintiff had periods of improvement and obtained some relief from her symptoms, the improvement was not sustained.

---

[7] "Synovitis" is inflammation of a synovial membrane layer of connective tissue that lines a joint. https://www.merriam-webster.com/dictionary/synovitis.

[8] Some later treatment notes include the following standard language: "The hands, wrists, elbows, shoulder, hips, knees and ankles are negative for swelling or tenderness EXCEPT: none[.]"  (*See*, e.g., Tr. 1000).  Some notes with that language also report that plaintiff had swelling of the wrists.  The ALJ consistently interpreted these conflicting notes as demonstrating no swelling.

Dr. Burton continually adjusted plaintiff's medications over the course of years of office visits in an effort to find a combination of treatments that would successfully alleviate her symptoms. Yet, for a period of at least three years predating Dr. Burton's March 3, 2016 letter, plaintiff suffered from severe active rheumatoid arthritis with symptoms that did not respond long-term to any medications, including the maximum dosage of Methotrexate tablets plus biologic treatments (Humira, Actemra, Remicade, and Orencia). Dr. Burton's treatment records thoroughly document that plaintiff's rheumatoid arthritis was not successfully controlled throughout the period of alleged disability, and there was little change in her condition prior to the date he issued his opinion.

The treatment records specifically document that as of January 2013, the medication Remicade, which had previously been reasonably effective in controlling plaintiff's rheumatoid arthritis, was no longer effective. (Tr. 629-30). Plaintiff had active synovitis, especially in the hands, wrists, elbows, knees, and ankles, and she suffered from severe fatigue. Dr. Burton changed her medications. Three months later, in March 2013, Dr. Burton noted that plaintiff has "rheumatoid arthritis which causes quite severe joint pain." (Tr. 582). Plaintiff had no active synovitis. (Tr. 583). Dr. Burton was "relatively pleased with how Orencia is working for her," and he reported the Prednisone dose could be decreased. (Tr. 583). Three months after that office visit, in June 2013, Dr. Burton noted that plaintiff had been able to eliminate Prednisone and continue on IV Orencia, and she was also taking naproxen sodium, topiramate, and Methotrexate. (Tr. 553). She had no severe synovitis in the feet, ankles, knees or hips, but her hands and wrists felt puffy. (*Id.*). Dr. Burton assessed that she "may have significant disease activity," and he would consider changing her medication to Actemra if a Vectra test confirmed his tentative assessment. (*Id.*). In October 2013, Dr. Burton reported that plaintiff

18

had a history of rheumatoid arthritis with joint pain, swelling, and stiffness involving her hands/wrists and sometimes the feet/ankles. (Tr. 528-30). He noted that she had required an increased does of Prednisone but it had not helped with "a flareup" of her symptoms, which indicated secondary fibromyalgia "on top of the rheumatoid [arthritis]." (Tr. 528-29). Her current medications included IV Orencia, Methotrexate, and Prednisone twice daily. She had mild swelling in the wrists with no active synovitis in the metacarpophalangeals (MCPs), proximal interphalangeals (PIPs), elbows, shoulders, knees or ankles. Dr. Burton did not change her current program of IV Orencia but felt that plaintiff might benefit from a slight increase of Methotrexate due to mild swelling in the wrists. (Tr. 530). Plaintiff had an IV infusion that month, and she reported at the session that her hand joints were painful with decreased mobility. (Tr. 540).

As of January 2014, plaintiff's rheumatoid arthritis was still active in the hands and wrists despite her medications, including a significant dose of Prednisone. (Tr. 495-496). IV Orencia with Methotrexate and Prednisone 5 mg twice daily was "still not controlling the joint pain, swelling and stiffness." Her fingers and MCPs were puffy. The plan was to switch medications from Orencia to Actemra as discussed in October and to double the dose if plaintiff did not respond after three infusions. The goal was to achieve "significant improvement in joint pain, swelling and stiffness." (*Id.*). At her February 2014 infusion, plaintiff complained of generalized joint pain. (Tr. 492). At the next month's infusion, she complained of swollen hands and pain in her hands and wrists. (Tr. 489). In April 2014, plaintiff had joint pain, swelling, and stiffness despite treatment with Actemra and Methotrexate; her response to a low dose of Actemra was inadequate and the dose had to be doubled; and her physical exam showed "swelling, synovitis [of the] wrists, hands, right knee and ankles." (Tr. 883).

In July 2014, Dr. Burton assessed plaintiff with "active CCP-positive rheumatoid arthritis" with chronic pain and symptoms of joint pain, swelling, and stiffness despite Methotrexate and Actemra. (Tr. 875-77). On physical examination, plaintiff had active synovitis in the ankles, knees, and both wrists. (Tr. 876). Chronic pain was present and the Vectra blood test was positive for active disease, which showed "her widespread body pain is not strictly due to fibromyalgia." (Tr. 877). Plaintiff had failed Methotrexate and Actemra, and Humira was started.[9] She was taking Naproxen twice daily to control joint pain, swelling, and morning stiffness, she was taking 10 mg Prednisone, and the plan was to increase Methotrexate to eight tablets per week. (Tr. 875-76). In August 2014, plaintiff reported that Humira was not working. (Tr. 872-73). Plaintiff was still having discomfort in her hands and swelling despite treatment with Methotrexate and Humira. (Tr. 872). Plaintiff continued to experience joint pain, discomfort and swelling in her hands and feet, and swelling in the joints. (Id.). She had undergone three injections with Humira and the hope was she could receive three or four more. A Vectra blood test showed positive rheumatoid arthritis disease activity. The plan was to see plaintiff in seven to eight weeks and assess the effectiveness of the Humira. (Tr. 873-74). If plaintiff failed Humira, the plan was to request Rituximab therapy coverage from her insurer. (Id.). In October 2014, plaintiff complained of joint pain and swelling, as well as stiffness in the morning. (Tr. 1658). Her energy level was "ok," and she was able to participate in all activities of daily living. In December 2014, plaintiff still had significant joint pain, swelling, and stiffness in multiple joint areas, including the ankles, knees, hands and wrists. (Tr. 1654). This was despite bimonthly Humira injections over the preceding six months. Plaintiff wanted

---

[9] Dr. Burton wanted to prescribe Rituximab, but he noted that plaintiff's insurance required that she fail a course of Humira before Rituximab was started. (Tr. 876).

to try IV Rituxan instead.   Her energy level was "ok" and she was able to participate in all activities of daily living.

In February 2015, Dr. Burton noted that plaintiff had rheumatoid arthritis that was resistant to "anti[-]TNF therapy"; she had just finished her first treatment course with IV Rituxan in January; and she was continuing with Methotrexate and tapering Prednisone.   (Tr. 1024). The notes include standard language which states: "The hands, wrists, elbows, shoulder, hips, knees and ankles are negative for swelling or tenderness EXCEPT: none[.]"   (Tr. 1026). However, Dr. Burton reported on physical examination: "Only swelling in wrists.   No severe swelling or tenderness of joints."   (*Id.*).   The plan was to administer the next dose of IV Rituxan the first week of June and begin to taper the Prednisone.   (*Id.*).   In May 2015, plaintiff was trying to taper off Prednisone; she was scheduled for two more infusions of IV Rituxan; and the treatment notes included form language indicating both no swelling and only swelling in the wrists.[10]   (Tr. 1066-68).

In January 2017, Dr. Burton noted that plaintiff had her first treatment of "2 Rituxan," she continued to take seven Methotraxen, and she was trying to taper off and stop Prednisone, which was now at 3 mg daily.   (Tr. 1595).   Her energy level was "ok," and she was able to participate in all activities of daily living.   (Tr. 1596).   Dr. Burton reported both no swelling and swelling only in the wrists.   (*Id.*).   In March 2017, plaintiff had achieved "good results" on IV Rituxan, which she was taking every four months.   (Tr. 1588).   Her energy level was fair and she was able to participate in most activities of daily living.   (*Id.*).   In May 2017, plaintiff

---

[10] This form language which states both that plaintiff was negative for swelling, and that she was positive only for wrist swelling, appears in several later reports.   *See* e.g., Tr. 1596, 1609, 1627-28, 1631.

complained of musculoskeletal aching for which she required pain medication twice a day, and she reported her energy level was "fair." (Tr. 1581). She was able to participate in most activities of daily living. (*Id.*). In July 2017, she reported similar complaints. (Tr. 1573). She was able to increase her activities of daily living and her ability to function with medication. (*Id.*). She continued to experience relief with a combination of opiates and a home exercise program. (Tr. 1574). In November 2017, after plaintiff transferred care to rheumatologist Dr. Gregory DeLorenzo, M.D., in Dr. Burton's practice, her biggest complaint was "some continued fatigue." (Tr. 1571). She was being treated with Methotrexate and 6-month cycles of Rituxan, which had controlled her symptoms for the most part but had recently been withheld due to ankle surgery. She had trace synovitis of the wrist MCPs and PIPs. (Tr. 1572). The plan was to restart Methotrexate and Rituxan to "help with her fatigue" and to consult pain management for chronic pain medication. (*Id.*). Her visit diagnosis was rheumatoid arthritis of multiple sites with negative rheumatoid factor; positive anti-CCP test; and malaise/fatigue. (Tr. 1573). In March 2018, plaintiff had mild tenderness of the MCPs and PIPs, and she was authorized to increase the Methotrexate dose. (Tr. 1569-70).

Plaintiff experienced increased symptoms, especially in the hands, in the summer of 2018. (Tr. 1567). She was taking Rituxan, Methotrexate, and Naproxen, which helped "overall." Her laboratory studies had been stable. She had minimal tenderness of the MCPs and PIPs. The plan was to continue her current medications, which overall helped, in the hope plaintiff would obtain "significant relief" with her next cycle of Rituxan in a couple of weeks. She declined a taper of Prednisone.

These treatment records appear to be consistent with, and to support, Dr. Burton's 2016 letter opinion that plaintiff suffered from debilitating symptoms of rheumatoid arthritis. In

finding otherwise, the ALJ failed to consider the medical evidence which shows that plaintiff's rheumatoid arthritis symptoms persisted despite her treating specialists' repeated efforts to find medications that would successfully control the symptoms. Though plaintiff showed some improvement with various medications, the treatment records document that her rheumatoid arthritis was not successfully controlled on a sustained basis. Dr. Burton reported as late as February 2017 that plaintiff's rheumatoid arthritis was "resistant" to anti-TNF therapy (Tr. 1024), and the treatment notes repeatedly document that he adjusted plaintiff's medications with the goal of helping plaintiff obtain significant relief from her ongoing symptoms. Dr. DeLorenzo subsequently indicated that though plaintiff's symptoms were generally controlled by medication, frequent adjustments had to be made to find the combination that would give plaintiff significant relief. Thus, the ALJ's finding that the treatment notes are inconsistent with and do not support the treating rheumatologist's March 2016 letter opinion is not substantially supported. (*See* Tr. 1227). The ALJ erred in evaluating the treating specialist's opinion regarding plaintiff's ongoing symptoms of rheumatoid arthritis.

Plaintiff's first assignment of error should be sustained.

## 2. The ALJ's RFC finding

Plaintiff argues that the ALJ's RFC finding is not substantially supported because the ALJ failed to take into account symptoms of her rheumatoid arthritis and fibromyalgia. (Doc. 8 at 5-6). Plaintiff contends she suffers from debilitating fatigue which precludes her from sustaining work for 40 hours each week. Plaintiff claims the ALJ failed to consider evidence which consistently documents that fatigue is a symptom of her rheumatoid arthritis, specifically: Dr. Burton's treatment notes dated January 2013 (Tr. 630, 914), March 2013 (Tr. 583), August 2014 (Tr. 873), and March 2016 (Tr. 1218); a treatment note by Dr. DeLorenzo dated November

2017 (Tr. 1571); and Central Clinic counseling notes from 2017/2018 (Tr. 1519, 1523, 1525, 1527). Plaintiff also contends that the ALJ erroneously failed "to note that fatigue is also a symptom of fibromyalgia" (Doc. 8 at 5, citing SSR 12-2p (2012)), and that the "strong medications" she takes for her rheumatoid arthritis allegedly cause her fatigue (*Id*. at 5-6). Plaintiff further notes that Dr. Fritzhand commented in his 2014 consultative exam report that plaintiff had "marked symptomatology" but a "relatively benign exam." (*Id*. at 6, citing Tr. 978). Plaintiff argues that this comment permits the logical inference that Dr. Fritzhand took fatigue into account when he concluded that plaintiff could perform only a "mild amount of sitting." (*Id*. at 6).

Plaintiff also claims that the restriction in the ALJ's RFC finding to "frequent" gross and fine manipulation bilaterally is unsupported. (*Id*. at 5). Plaintiff contends that symptoms of hand and wrist swelling, which were noted on numerous examinations from 2013 until December 2015, preclude her from using her hands frequently to perform unskilled work. The Commissioner alleges that the ALJ considered plaintiff's hand swelling, and his finding that plaintiff was limited to "frequent" gross and fine manipulation is supported by substantial evidence. (Doc. 10 at 6-7, citing Tr. 1228). The Commissioner notes that the ALJ imposed a restriction on gross and fine manipulation even though consultative examining physician Dr. Fritzhand opined that plaintiff had no difficulty reaching, handling, or handling objects (*Id*. at 7, citing Tr. 978), and the non-examining state agency physicians found plaintiff could perform light work (*Id*., citing Tr. 101-02, 130-32).

Dr. Burton found that plaintiff suffered from joint swelling, pain, and severe fatigue. (Tr. 1218). As discussed in connection with plaintiff's second assignment of error, Dr. Burton's treatment notes consistently document symptoms of joint swelling in plaintiff's fingers,

24

hands, and wrists, and they also document fatigue. Thus, the resolution of plaintiff's first assignment of error is closely related to, and depends in large part on, further evaluation and weighing of the treating rheumatologist's findings and opinion on remand. The Court therefore need not address the error at this time. On remand, the ALJ should reweigh Dr. Burton's opinion and reevaluate the impact of plaintiff's rheumatoid arthritis symptoms on her RFC in light of the evidence of plaintiff's continuing symptoms and Dr. Fritzhand's report.

### 3. Closed period of disability

Plaintiff next contends in the alternative that the ALJ erred in declining to award her a closed period of disability from the alleged disability onset date in January 2013 until December 3, 2015. (Doc. 8 at 8-9). A claimant who no longer qualifies as disabled "may be entitled to benefits if she previously suffered a disability for a continuing, twelve-month period." *Turk v. Comm'r,* 647 F. App'x 638, 641 (6th Cir. 2016) (citing *Kennedy v. Comm'r of Soc. Sec.,* 87 F. App'x 464, 466 (6th Cir. 2003); *Smith v. Sec'y of Health & Human Servs.,* 893 F.2d 106, 110 (6th Cir. 1989)). The Commissioner denies that the evidence supports a closed period of disability. (Doc. 10 at 14).

Because plaintiff's claim must be remanded for further fact-finding and evaluation, it would be premature to determine whether plaintiff is entitled to a closed period of disability. To the extent the record on remand does not support plaintiff's claim for the entire period of alleged disability, the ALJ should consider whether plaintiff is entitled to a closed period of disability.

### 4. Evaluation of plaintiff's subjective complaints

Plaintiff alleges as her fifth assignment of error that the ALJ erred in evaluating her subjective complaints under 20 C.F.R. §§ 404.1529 and 416.929 and under SSR 16-3p. (Doc. 8

at 9-11). The Commissioner argues that the ALJ's evaluation of plaintiff's symptoms is supported by the objective medical and other evidence of record and therefore must be upheld under the applicable rules and regulations.

The SSA rescinded SSR 96-7p and replaced it with SSR 16-3p, which is applicable to agency decisions issued on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p therefore applies to the ALJ's decision here, which was issued in December 2018. SSR 16-3p eliminates "the use of the term 'credibility'" from the SSA's sub-regulatory policy and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." *Rhinebolt v. Commr. of Soc. Sec.*, No. 2:17-cv-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (Report and Recommendation), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

The regulations and SSR 16-3p describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations

and restrictions due to pain or other symptoms.  20 C.F.R. §§ 405.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3-8.

The ALJ determined that plaintiff has medically determinable physical and mental impairments that could reasonably be expected to cause her alleged symptoms.  (Tr. 1229).  However, the ALJ found that plaintiff's statements as to the intensity, persistence, and limiting effect of those symptoms were not entirely consistent with both the objective medical evidence and other evidence of record.   In making his determination, the ALJ reviewed and relied on plaintiff's medical records and her activities, both of which the ALJ found were inconsistent with plaintiff's allegations of disabling mental and physical impairments.  (*Id.*).

An ALJ may "consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."  *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (citing *Walters*, 127 F.3d at 532; *Blacha v. Sec. of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)).   The ALJ found that from October 2014 through June 2016, Dr. Burton noted that plaintiff was able to participate in all activities of daily living, and she was able to participate in most activities of daily living in 2017.  (Tr. 1236, citing Tr. 1635, 1658, 998, 1024, 1057, 1066, 1086, 1116, 1607, 1623, 1573, 1581, 1588).   The ALJ summarized plaintiff's testimony of her daily activities as follows: She lives with her mother and teenage daughter and has a dog and two cats; she started working part-time (Thursdays and alternates Saturdays) in March 2016 delivering flowers for a friend who is more relaxed in her role as plaintiff's boss; she may come in early, leave early, or stay late on a given day; her friend cleans her home; she shops for groceries but usually with a friend; she eats out on occasion; she sleeps, reads, and watches television; she is always in some degree of pain and avoids exerting herself to alleviate her pain; and she has a good work history.  (Tr. 1229; *see*

*also* Tr. 1261-62). The ALJ did not explain how these activities are inconsistent with the ability to perform sustained work activity 8 hours each day and 5 days per week. Nor did the ALJ explain the inconsistencies between plaintiff's testimony as to her daily activities, including her part-time work for an accommodating boss and shopping and cleaning with assistance, and Dr. Burton's generalized assertion that plaintiff could participate in all activities of daily living. Thus, the ALJ did not reasonably rely on plaintiff's daily activities and Dr. Burton's treatment notes to discount plaintiff's subjective complaints. *See Keeton*, 583 F. App'x at 533-34. The ALJ's evaluation of plaintiff's subjective complaints is not substantially supported.

Plaintiff's fourth assignment of error should be sustained, and plaintiff's subjective complaints should be reevaluated on remand.

### 5. Errors at step five of the sequential evaluation

The Commissioner concedes in his motion to remand that the ALJ's finding at step five that plaintiff could perform a significant number of jobs in the national economy was not supported by substantial evidence. The Commissioner argues that whether an individual with plaintiff's job limitations could perform a significant number of jobs is a factual issue, and the ALJ must obtain testimony from a VE to resolve the issue. Plaintiff argued in her opposition to the motion to remand that the only jobs the ALJ found she is capable of performing either require frequent manipulation, which she is unable to perform, or are outdated jobs. *See Alaura v. Comm'r*, 797 F.3d 503, 507-08 (7th Cir. 215); *Cunningham v. Comm'r*, 360 F. App'x 605, 615-16 (6th Cir. 2010). Plaintiff makes these same arguments in her statement of errors. She contends that even assuming she can sustain unskilled sedentary work for 40 hours each week, the ALJ did not carry his burden at step five to show there are a significant number of jobs she

can perform. (Doc. 8 at 12). The Commissioner did not address this argument in his response to the statement of errors.

At step five of the sequential evaluation, the burden shifts to the Commissioner. *Cunningham*, 360 F. App'x, at 612 (citing *Wilson,* 378 F.3d at 548) (citation omitted). The Commissioner's burden at step five is to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Id.* (citing *Wilson*, 378 F.3d at 548). The Commissioner may rely on a VE's testimony to find that the claimant has the RFC to perform "other substantial gainful activity that exists in the national economy." *Id.* at 612-13 (citing *Wilson*, 378 F.3d at 548). The VE may base his testimony on job descriptions contained in the Dictionary of Occupational Titles ("DOT"). *Id.* at 615; *see* United States Department of Labor (DOL), Dictionary of Occupational Titles (1991), available at http://www.oalj.dol.gov. The Commissioner takes administrative notice of the DOT when determining if jobs exist in the national economy. *Id.* (citing 20 C.F.R. § 404.1566(d)(1)). However, the DOT is dated, and "common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted." *Id.* The Sixth Circuit in *Cunningham* found that two relevant descriptions in the case before it - "document preparer and security camera monitor - [struck the Court] as potentially vulnerable for this reason." *Id.* The Court found that, "Without more, . . . we cannot adequately review whether these job descriptions were up-to-date and, thus, whether the VE's testimony was reliable." *Id.* (citation omitted).

The Court in *Cunningham* further noted at the time of the 2005 hearing before the ALJ in that case, the DOL had replaced the DOT with the Occupational Information Network (O*NET), "a database that is continually updated based on data collection efforts that began in 2001." *Id.*

at 616. The two job descriptions the VE relied on were not found in the O*NET, which led the Court to conclude that the "VE's dependence on the DOT listings alone does not warrant a presumption of reliability." *Id*. at 616 (citing, e.g., O*NET Resource Center, http://www.onetcenter.org/data Collection.html (last visited Jan. 4, 2010)). The Court therefore remanded the matter to the Commissioner "for consideration of whether the DOT listings, specifically the document preparer and security camera monitor descriptions, were reliable in light of the economy as it existed at the time of the hearing before the ALJ." *Id*.

A similar result is warranted here. The two occupations that plaintiff challenges as outdated are "document preparer" and "addresser." The VE in this case relied on the same DOT description of "document preparer" which the Court in *Cunningham* characterized as likely obsolete in its 2010 decision. *Id*. at 615. Plaintiff has raised questions as to whether the DOT description of addresser is likewise obsolete. The Commissioner has not responded to the issues plaintiff has raised as to the reliability of the VE's testimony. Accordingly, additional VE testimony is appropriate on remand to address this factual issue.

Further, plaintiff claims she would not be able to perform the unskilled, sedentary jobs identified by the VE, which require frequent use of the hands, because she is restricted to occasional use of the hands. (Doc. 8 at 11, citing Tr. 1273). Plaintiff alleges she "has trouble holding a phone," and she also testified that she has trouble writing and sometimes driving. (*Id*., citing Tr. 58-60, 1255-56, 1264). The resolution of this issue hinges on reweighing of the medical opinion evidence and reevaluation of plaintiff's subjective complaints on remand.

Plaintiff's fifth assignment of error is sustained.

## V. Reverse or remand

In a case such as this, where the non-disability determination is not supported by

substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.   Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176 (citations omitted). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.   *Id*. (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)); *see also Felisky*, 35 F.3d at 1041.

Here, all essential factual issues have not been resolved and the record does not adequately establish plaintiff's entitlement to benefits. *Faucher*, 17 F.3d at 176.   Questions remain as to the impact plaintiff's rheumatoid arthritis has on her ability to perform gross and fine manipulation bilaterally; the number of jobs in the national economy available to an individual with plaintiff's mental and physical limitations; and whether plaintiff is entitled to a closed period of disability in the alternative to an award of benefits for the entire period of alleged disability.

## IT IS THEREFORE ORDERED THAT:

1.   Defendant's motion to strike plaintiff's statement of errors (Doc. 11) is **DENIED.**

## IT IS THEREFORE RECOMMENDED THAT:

1.   Defendant's motion for voluntary remand (Doc. 6) be **DENIED**.

2.   The Commissioner's decision be **REVERSED** and this matter be **REMANDED** for further proceedings pursuant to 42 U.S.C. § 405(g).

Date: 1/6/2020

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANN M. DECORREVONT,
    Plaintiff,

Case No. 1:19-cv-137

Dlott, J.

Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).